a disturbed municipal situation inconsistent with the efficient administration of civic affairs. Dillon on Municipal Corporations (5th ed.), section 466, says: "The exercise of the power to remove an officer is essentially administrative in its nature. Even when the city council or other removing power sits to hear charges against an officer as a cause for removal, it is an administrative body exercising administrative functions."

The judgment is affirmed.

## Commonwealth, Appellant, *v.* Fried & Reineman Packing Company.

Argued March 23, 1938. Before KEPHART, C. J., MAXEY, DREW, LINN, STERN and BARNES, JJ.

The facts are stated in the opinion of the lower court, by McNAUGHER, J., as follows:

This is an appeal from a decision of the Board of Mercantile Appraisers levying a tax upon a meat packing company for sales of lard for the year 1936.

The applicable provision of law is a portion of section 1 of the Act of 1929, P. L. 1709: "Each wholesale vendor of or wholesale dealer in goods, wares and merchandise shall pay an annual mercantile license tax of three dollars, and all persons so engaged shall pay one-half mill additional on each dollar of the whole volume, gross, of business transacted annually: Provided, That the provisions of this section shall not apply to the taxation for mercantile license purposes of wholesale vendors or wholesale dealers, so engaged in the business of the processing and curing of meats, their products and by-products, but every wholesale vendor or wholesale dealer so engaged shall pay the mercantile license tax herein imposed upon such proportion of its business, if any, which is not strictly incident or appurtenant to the processing and curing of meats, their products and by-products, it being the object of this proviso to relieve from the mercantile license tax only so much of the whole volume, gross, of business transacted annually as is realized from *the processing and curing of meats, their products and by-products.*" (Italics ours.)

It is conceded by the Commonwealth that in the production of lard there is a "processing" within the meaning of the statute, so that the case turns entirely on the question whether there is also a "curing."

The Act of 1899, P. L. 184, imposing a mercantile license tax on vendors of and dealers in goods, wares, and merchandise, did not apply to manufactured articles. In the case of *Commonwealth v. Weiland Packing Company,* 292 Pa. 447 (1928), it was held that the products of a packing business were subject to the tax because they were not manufactured articles. Evidently for the purpose of treating alike those engaged in manufacturing and meat packers who by various processes and at considerable outlay improved raw materials and placed upon the market goods which were changed in form and condition by the application of labor and skill, the Legislature, the year following the decision in the *Weiland* case, exempted from the mercantile tax "so

much of the whole volume, gross, of business transacted annually as is realized from the processing and curing of meats, their products and by-products."

The fair meaning of "curing" must be determined by general usage and the evidence which has been offered. Dictionary definitions of the verb "cure" are as follows:

TWENTIETH CENTURY DICTIONARY: "To dry, to prepare for preservation, as to cure hay; or to prepare by salt or in any manner so as to preserve; as to cure fish or beef."

WEBSTER'S NEW INTERNATIONAL DICTIONARY: "Process or method of curing, as of fish, pork, etc." Also, "To prepare for keeping; to preserve, as by drying, salting, etc.; as to cure beef or fish; to cure hay."

OXFORD ENGLISH DICTIONARY: "To prepare for keeping, by salting, drying, etc.; to preserve (meat, fish, fruit, tobacco, and so on)—quotations include references to sponges, hops, grapes (raisins), herrings, beef, fish, sugar, grass (hay)."

The testimony in behalf of the taxpayer describes the production of lard. Parts of a hog containing fats are taken from the carcass, cut or chopped into small pieces, placed in a heating apparatus, and cooked under pressure for a certain period; the water or moisture is removed and, after cooking, the "cracklings," including a large amount of ash and protein, are separated. The liquid is then drawn off, cooled, and later stabilized and chilled by rotation on a refrigerated cylinder. Afterward it is revolved in a gyrator which causes a rearrangement of the fat crystals; and the finished article is then run into cans or containers for sale to the public and may be kept for a long period of time without becoming rancid. The raw materials used to produce or render the lard will, on the other hand, upon exposure to normal temperatures become putrid and rancid within twenty-four to forty-eight hours.

During the hearing counsel for the Commonwealth sought to show that the expression "cured lard" is never

used among those engaged in the packing business. That seems beside the point—if there is any curing involved it is not the lard that is cured but the substance out of which the lard is produced. And it is immaterial what term is used in describing the process. The question is whether lard can fairly be said to be the product of the "curing of meats, their products and by-products."

We think it must be agreed that preserving, or keeping, is an essential result of curing. Whatever may be the change in color or flavor of certain articles which are spoken of as "cured," there is always the purpose in mind that the process shall preserve the substance from decay and deterioration. This meaning runs through all the dictionary definitions which have been referred to. And drying, or the removal of moisture, which with other changes is involved in making lard, is admittedly the sole means employed in preserving and "curing" some substances, hay for example.

It is our opinion that sales of lard fall within the exemption, lard being a product of the "curing of meats, their products and by-products." The appeal of the taxpayer will, therefore, be sustained.

*E. Russell Shockley,* Deputy Attorney General, with him *Charles J. Margiotti,* Attorney General, and *Francis P. Anton,* for appellant.

*John E. Evans, Sr.,* for appellee.

PER CURIAM, April 18, 1938:

Affirmed on the opinion of Judge MCNAUGHER of the court below.

Appellant to pay the costs.